UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STARBOARD GROUP
ADMINISTRATIVE SERVICES, LLC,
et al.,

    Plaintiffs,

v.

RYAN DAVIS,

    Defendant.
_____/

Case No. 1:23-cv-176

Hon. Hala Y. Jarbou

## OPINION

This is a declaratory judgment action in which Plaintiffs Starboard Group Administrative Services, LLC and Starboard Group Management Company, Inc. allege that Defendant Ryan Davis "is seeking to use the garnishment process to recover on [his] judgment from the Plaintiffs based on alleged claims he has not brought against the Plaintiffs to recover that obligation[.]" (Am. Compl. ¶ 47, ECF No. 8.)  In other words, Plaintiffs allege that Davis is attempting to collect from them based on a judgment against a third party, Starboard Group of Great Lakes, LLC ("Great Lakes").  Those collection efforts involve garnishment proceedings in Ingham County Circuit Court. Plaintiffs seek a declaration from this Court that they are not obligated to pay Davis because "there was no fraudulent transfer from Great Lakes to Plaintiffs," Plaintiffs are not an "alter ego of Great Lakes," and Plaintiffs have "no contribution obligation to Great Lakes[.]"  (Am. Compl., PageID.20.)

Earlier in this case, the Court noted that

> [t]he existence of ongoing state proceedings involving the issues presented here raises concerns about comity between federal and state courts, piecemeal litigation, and forum shopping.  In other words, it raises the sort of concerns that the Court

would consider when deciding, in its discretion, whether to exercise jurisdiction under the Declaratory Judgment Act. *See Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 29 F.4th 792, 796-97 (6th Cir. 2022) (citing the factors to consider for the exercise of declaratory judgment jurisdiction articulated in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)).

(5/10/2023 Order to Show Cause, ECF No. 21.)

Generally, it is "uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) (involving a federal declaratory judgment action and parallel state-court garnishment proceedings); *see Nat'l Emblem Ins. Co. v. Washington*, 482 F.2d 1346 (6th Cir. 1973) (same circumstances). The Court can raise this issue sua sponte. *See Mass. Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 F. App'x 431, 437 (6th Cir. 2018); *Travelers Indem. Co v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007).

Citing these concerns, the Court ordered Plaintiffs to show cause why the Court should not decline to exercise its declaratory judgment jurisdiction or abstain from exercising jurisdiction under various abstention doctrines. Plaintiffs responded to that order. (Pls.' Br., ECF No. 24.) In addition, Davis has filed a motion to dismiss. (Mot. to Dismiss, ECF No. 12.)

## I. BACKGROUND

The following facts are taken from the amended complaint (ECF No. 8) and the state-court documents filed by the parties. In 2012, Plaintiffs and 25 other entities (collectively, the "Original Entities") were parties to a credit agreement with Fifth Third Bank as an agent of a consortium of lenders (collectively, "Fifth Third"). (Am. Compl. ¶ 9, ECF No. 8.) Great Lakes was formed in 2015 for the purpose of purchasing several Wendy's restaurants located in Michigan. At the time, the Original Entities owed Fifth Third approximately $33 million. In order for Great Lakes to purchase the restaurants, Fifth Third agreed to add Great Lakes as a borrower to the credit

agreement and to increase the debt by $49 million to a total of $82 million. Great Lakes used the additional money loaned by Fifth Third to purchase the Wendy's restaurants.

The restaurants were not profitable. In 2019, Great Lakes sold most of the restaurants to a third party for $41.1 million. For the other restaurants, Great Lakes settled with the landlords or abandoned the leases.

Defendant Davis was one of the landlords impacted. He had purchased one of the Wendy's properties in 2016 and leased it to Great Lakes. In December 2020, Davis filed an action against Great Lakes in Ingham County Circuit Court for breach of contract. Davis claimed that Great Lakes breached the lease agreement by failing to pay rent and other charges due under the lease. In February 2021, Davis obtained a default judgment against Great Lakes for approximately $1.6 million. (Ingham Cnty. Cir. Ct. Default J., ECF No. 12-7.)

Later that year, Davis sent writs of garnishment to Plaintiffs to recoup part of the default judgment. In response to the writs, Plaintiffs denied having any liability to Davis. However, Davis believes that, under the terms of the credit agreement with Fifth Third, the Original Entities (including Plaintiffs) and Great Lakes were jointly and severally liable for the debt to Fifth Third. After Great Lakes sold most of the Wendy's restaurants in 2019, it made a payment to Fifth Third for $27.25 million, which purportedly reduced the liability of all the debtor-parties to the credit agreement. Because Great Lakes paid more than its 1/26th share of the debt, Davis believes that Plaintiffs and the other Original Entities owe Great Lakes a "contribution" under Michigan law. *See French v. Young*, 290 N.W. 861, 863 (Mich. 1940) ("It is well settled that, where one of two or more sureties for the same obligation has paid more than his share of the debt, he is entitled to contribution from his cosureties to reimburse him for the excess paid over his share in order to equalize the common burden.") (quoting *Assets Realization Co. v. Am. Bonding Co. of Baltimore*,

3

102 N.E. 719, 725 (Ohio 1913)).  Thus, Davis seeks to garnish from Plaintiffs what he believes they owe Great Lakes.

After Plaintiffs responded to the writs of garnishment in state court, the parties engaged in discovery.  Among other things, Davis sought to compel Plaintiff Starboard Group Administrative Services, LLC ("Starboard") to provide discovery about transactions between the Original Entities after the sale of the Wendy's properties.  (*See* 5/11/2022 Ingham Cnty. Cir. Ct. Hr'g Tr. 3, ECF No. 25-1.)  At a hearing on the motion to compel, Starboard objected to providing discovery because it believed that Davis's writ of garnishment had not articulated a "cause of action"; thus, the discovery requests were not relevant.  (*Id.* at 5.)  Starboard argued that Davis was obligated to file a complaint against it in a separate action in order to obtain discovery pertaining to Davis's theory of liability.  (*Id.* at 6-7.)

In response, Davis asserted that his theory of liability was that Starboard was a joint obligor on a debt to Fifth Third and that Starboard owed a contribution to Great Lakes after Great Lakes paid more than its pro rata share of the debt obligation.  (*Id.* at 9-10.)  Davis also alluded to the possibility that Great Lakes had distributed its proceeds from the sale of the Wendy's properties to Starboard.  (*Id.* at 7-8.)  The state court agreed with Davis that the discovery requests were relevant to Starboard's liability and granted some of those requests.  (*Id.* at 21-28.)

In November 2022, Davis brought a motion for summary disposition.  At a hearing on the motion, Davis again asserted his contribution theory of liability.  (12/7/2022 Ingham Cnty. Cir. Ct. Hr'g Tr. 4-11, 20, ECF No. 12-5.)  Plaintiffs responded to that theory, arguing that they do not owe a contribution to Great Lakes because they never received a benefit.  (*Id.* at 22-32.)  The Court denied the summary disposition motion without prejudice, concluding that there were disputed facts about how Fifth Third credited the Original Entities for the money it received from Great

4

Lakes. (*Id.* at 34-38.) The court entered its order denying the motion in January 2023. (1/20/2023 Ingham Cnty. Cir. Ct. Order Den. Summ. Disp. Without Prejudice, ECF No. 12-5, PageID.96.)

Davis then moved for reconsideration on February 6, 2023, again asserting that Plaintiffs were liable for contribution to Great Lakes. (*See* State Ct. Mot. for Reconsid., ECF No. 12-5, PageID.86-94.) While the reconsideration motion was pending, Plaintiffs brought this declaratory judgment action to resolve the question of their liability to Davis. Plaintiffs also asked the state court to stay its proceedings in light of the federal case.

At a hearing on the motion to stay in state court, Plaintiffs acknowledged that the "cause of action" against them in the garnishment proceedings was for contribution; however, they argued that the process they had received in those proceedings was unfair because Davis never filed a complaint laying out his factual allegations and legal theories. (4/18/2023 Ingham Cnty. Cir. Ct. Hr'g Tr. 6-8, ECF No. 25-2.) Plaintiffs argued that they had been prejudiced because they did not receive "initial disclosures" from Davis and were not aware of Davis's contribution theory during discovery. (*Id.* at 10-11.) At the same time, however, Plaintiffs acknowledged that the state court had given them an opportunity for discovery. (*Id.* at 12-13.)

The state court declined to stay the case, expressing concerns with Plaintiffs' lawsuit in federal court:

> Why do you want to duplicate stuff? You already had discovery. It's a pretty clear claim. [Davis] can supplement a claim, but it's a pretty clear claim. Why do you want to switch forums? Really. It's just an effort to switch forums. I mean, you could have brought it here and said, look, Judge, why don't you ask them to file a complaint so we can determine it here. No, you didn't want this Court to hear it. You went somewhere else. That's what you wanted to do. I think it's clear what it is. You wanted it in a pleading. It's been pled in the recent things. So we know what the issue is. And you are just forum shopping, aren't you?
>
> * * *
>
> I don't mind calling a spade a spade. Because the issues are clear here. I gave you discovery. Now that wasn't enough. You want to take it to a different forum.

5

> \* \* \*
>
> We all know it's a contribution action. We know it's a contribution on the garnishee of the Defendants in this matter. That's clear. We know what the numbers are. That's clear. . . . I don't see where I am going to stay these proceedings for you to go do the same thing that you can do here. That's all I am saying. You can do the exact same thing here that you're attempting to do. That's why I say, bottom line is, it becomes forum shopping.

(*Id.* at 14-15, 19-20.) When denying the motion to stay, the state court referred to the federal case as "a collateral attack on this proceeding." (*Id.* at 21.)

## II.  DECLARATORY JUDGMENT JURISDICTION

"The Declaratory Judgment Act provides that a district court *may* declare the rights and other legal relations of any interested party seeking such declaration[.]" *Travelers Indem. Co.,* 495 F.3d at 271 (quotation marks and citation omitted). The Court has "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Id.* (quoting *Adrian Energy Assocs. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 421 (6th Cir. 2007)).

"In determining the propriety of entertaining a declaratory judgment action, competing state and federal interests weigh in the balance, with courts particularly reluctant to entertain federal declaratory judgment actions premised on diversity jurisdiction in the face of a previously-filed state-court action." *Adrian Energy*, 481 F.3d at 421. The Court considers the following factors:

> (1) whether the declaratory action would settle the controversy;
>
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
>
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
>
> (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

6

(5) whether there is an alternative remedy which is better or more effective.

*Cardinal Health*, 29 F.4th at 796-97 (quoting *Grand Trunk*, 746 F.2d at 326).

### A. Settle the Controversy

Under this factor, the Court must "examine whether resolution of the declaratory judgment action will resolve all the disputes between the parties in the underlying state court action." *Boyd v. Martinez*, No. 22-6026, 2023 WL 4903173, at *5 (6th Cir. Aug. 1, 2023). In the garnishment proceedings, Davis apparently seeks to recover from Plaintiffs for the default judgment against Great Lakes under a contribution theory of liability. Here, Plaintiffs seek a declaration that they are not liable to Davis under that theory, or under an alter ego or fraudulent conveyance theory. In other words, the declaratory judgment complaint is a direct response to the garnishment proceedings. The complaint also raises potential theories that might not be at issue in those proceedings. Thus, this factor weighs in favor of jurisdiction because it would settle the underlying dispute at issue, which is Plaintiffs' liability to Davis.

### B. Serve a Useful Purpose

"[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 557 (6th Cir. 2008). The basis for this requirement is a "desire for the declaratory judgment to provide a final resolution of the discrete dispute presented." *Id.* This action meets that requirement. Accordingly, this factor also weighs in favor of exercising jurisdiction.

### C. Procedural Fencing or Race to Res Judicata

"This factor examines whether the party bringing the federal court declaratory judgment action has improper motives or is filing the federal action to 'start a race for res judicata.'" *Boyd*, 2023 WL 4903173, at *6 (quoting *Cardinal Health*, 29 F.4th at 797). "'Procedural fencing' refers

7

to 'a range of tactics that courts regard as unfair or unseemly[.]'" *Cardinal Health*, 29 F.4th at 797 (quoting *W. World Ins. Co. v. Hoey*, 773 F.3d 755, 761 (6th Cir. 2019)).

Davis chose state court garnishment proceedings as the method of recovery against Plaintiffs. Plaintiffs did not attempt to remove that action to this Court. Instead, they brought a declaratory judgment suit in this Court many months later, after resisting discovery in state court. On the one hand, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation [in state court] is not considered improper by itself." *Mass. Bay Ins. Co.*, 759 F. App'x at 439. On the other hand, the state court here (which has more insight into the litigation between the parties) has described Plaintiffs' complaint in this Court as "forum shopping" and as a "collateral attack" on the state court proceeding, which suggests an improper motive by Plaintiffs. Courts are reluctant to impute improper motive, however, so this factor weighs only slightly against exercising jurisdiction.

**D. Friction Between Federal and State Courts**

To assess friction between federal and state courts, the Court looks at three subfactors:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 439 (quoting *Flowers*, 513 F.3d at 560).

Davis apparently believes that the factual issues in the case are straightforward enough for the Court to grant him summary judgment on his contribution theory. (Def.'s Reply Br. 7, ECF No. 25.) In other words, (1) Davis has a default judgment against Great Lakes, (2) Plaintiffs were parties to a credit agreement with Great Lakes and many other parties, all of whom were jointly

8

and severally liable to Fifth Third, (3) Great Lakes paid a portion of that debt above and beyond its proportionate share, and (4) Great Lakes is owed a contribution by the other parties to compensate it for that payment. However, the extent of Plaintiffs' liability under Davis's contribution theory will depend, in part, upon the effect of payments made by Great Lakes or the Original Entities to Fifth Third. When denying Davis's motion for summary disposition, the state court noted that Fifth Third appeared to have credited some of the Original Entities for payments it received from Great Lakes. (12/7/2022 Ingham Cnty. Cir. Ct. Hr'g Tr., ECF No. 12-5, PageID.130-131.) So far as the Court is aware, those factual issues have not been resolved. "[T]he presence of factual issues that are also being decided in the state-court litigation usually cuts against finding that [sub]factors one and two are satisfied[.]" *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 399 (6th Cir. 2019).

As to the third subfactor, the underlying legal issues are all based on state law. Consequently, a state court is better positioned to assess those issues. Although Plaintiffs contend that the legal issues are not complex, the Court can find very little precedent applying Davis's contribution theory, let alone a case involving multiple parties to a credit agreement. Accordingly, this factor weighs against exercising jurisdiction.

### E. Alternative Remedies

The Court also considers the availability of alternative remedies. One alternative is for Plaintiffs to simply await the resolution of the state proceedings, where they will ultimately receive a ruling on Davis's writ of garnishment, though it is unclear whether all three potential theories of liability can or will be resolved in that proceeding. Plaintiffs also note that they could have filed a declaratory judgment action in state court raising all those theories. They argue there is no evidence that such an action would have been "better or more effective" than a federal one; however, such actions are superior in that state courts are better positioned to evaluate issues of

9

state law, even in cases like this one where there is diversity jurisdiction. *See Cole's Place*, 936 F.3d at 401 (noting in diversity case that "the state remedy has the advantage of allowing the state court to apply its own law"); *accord Cardinal Health*, 29 F.4th at 801; *Mass. Bay Ins. Co.*, 759 F. App'x at 441. Thus, this factor also weighs against exercising jurisdiction.

### F. Summary

After weighing the factors, the Court concludes that the better course is to decline to exercise declaratory judgment jurisdiction in deference to the proceedings that are well underway in state court on issues of state law. Doing so avoids the possibility of encroachment on, and conflict with, a state court on matters that are better suited for resolution by that court. And although Plaintiffs' federal complaint alleges additional potential theories of recovery by Davis that might not be at issue in the state garnishment proceedings (e.g., fraudulent transfer), it is clear from the circumstances and from the complaint itself that Plaintiffs brought this action solely because of those proceedings. Thus, as a practical matter, resolution of those proceedings will likely resolve the underlying dispute between the parties.

### III. ABSTENTION

The Court also asked Plaintiffs to brief various abstention doctrines, but the Court agrees that they do not apply here.

### A. *Colorado River* abstention

For instance, the *Colorado River* abstention doctrine "does not apply" where, as here, "the federal court action is one for a declaratory judgment." *Boyd*, 2023 WL 4903173, at *4.

### B. *Younger* abstention

The *Younger* abstention doctrine derives from *Younger v. Harris*, 401 U.S. 37 (1971), whereby the Court must "abstain from granting injunctive or declaratory relief that would interfere

10

with pending state judicial proceedings." *O'Neill v. Coughlan*, 511 F.3d 638, 643 (6th Cir. 2008). Three requirements guide the analysis:

> (1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges.

*Id.* at 643. The *Younger* abstention doctrine applies to federal declaratory judgment actions "because [such actions can] involve 'precisely the same interference with and disruption of state proceedings' as an injunction." *Carroll v. City of Mt. Clemens*, 139 F.3d 1072, 1073 (6th Cir. 1998) (quoting *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

### 1. State proceedings

Plaintiffs argue that there is no underlying state court action parallel to this one. They contend that a writ of garnishment does not initiate a civil action in Michigan state court because it does not allege facts or contain claims. Although the Court concludes that *Younger* does not apply here for other reasons, the Court will address this argument to the extent it has bearing on the Court's declaratory judgment analysis above.

The Michigan Court Rules undermine Plaintiffs' argument. Post-judgment garnishment proceedings begin with the issuance of a writ containing a verified statement identifying the judgment and the person who is indebted to the defendant. Mich. Ct. R. 3.101(D). In Michigan, "[a] civil action is commenced by filing a complaint with a court." *Id.* 2.101(B). In garnishment proceedings, "[t]he verified statement *acts as the plaintiff's complaint* against the garnishee[.]" *Id.* 3.101(M)(2) (emphasis added). The writ must be served on the garnishee "in the manner provided for the service of a summons and complaint[.]" *Id.* 3.101(F)(1). The garnishee must also file with the court and serve on the garnishee a "verified disclosure . . . revealing the garnishee's liability to the defendant[.]" *Id.* 3.101(H)(1). If there is a dispute about liability, "the issue shall be tried in the same manner as other civil actions." *Id.* 3.101(M)(1). The garnishee has a right to a trial and

11

discovery. *Id.* 3.101(M)(4). Those proceedings may result in a judgment against the garnishee. *Id.* 3.101(O). That judgment may be appealed "in the same manner and with the same effect as judgments or orders in other civil actions." *Id.* 3.101(P). Also, the costs of garnishment proceedings "are allowed as in civil actions." *Id.* 2.625(E). In other words, the Michigan Court Rules treat garnishment proceedings as the equivalent of a civil action.

Furthermore, the Michigan Supreme Court has held that writs of garnishment "constitute a separate action," triggering a right to prejudgment interest. *Hunt v. Drielick*, 956 N.W.2d 514, 516 (Mich. 2021); *see also Burr v. Heffner*, 286 N.W. 169, 170 (Mich. 1939) ("A writ of garnishment is a civil process at law in the nature of an attachment[.] The usual test as to the liability of a garnishee is whether the principal defendant could have maintained an action against the garnishee to recover the property in question.") (citation omitted). All of the foregoing suggests that Michigan law treats garnishment proceedings as separate civil actions.

Plaintiffs also argue that a contribution claim is an equitable cause of action that must be decided in a separate civil action, rather than a garnishment proceeding. They provide no support for this argument. They cite *Caldwell v. Fox*, 231 N.W.2d 46 (1975), which states that the "doctrine of contribution had its origin in equity." *Id.* at 54. However, Plaintiffs provide no authority indicating that garnishment proceedings cannot be used to obtain equitable relief.

Plaintiffs also cite *Nationsbanc Mortgage Corp. of Georgia v. Luptak*, 625 N.W.2d 385 (Mich. Ct. App. 2000), which held that a plaintiff in a garnishment proceeding could not rely upon a writ of garnishment to obtain property that the garnishee allegedly held by fraudulent conveyance, unless the conveyance had been declared void in a separate proceeding. *Id.* at 389. There, the garnishment plaintiff relied upon the following category of property held by the garnishee:

12

> all tangible or intangible property of the defendant that, when the writ is served on the garnishee, the garnishee holds by conveyance, transfer, or title that *is void* as to creditors of the defendant . . . .

Mich. Ct. R. 3.101(G)(1)(h) (emphasis added). The court held that this category did not apply because the transfer at issue had not been declared void when the writ of garnishment was served on the garnishee. The court interpreted the term "void" in this rule "as requiring a previous judicial determination that the transfer at issue is indeed void." *Luptak*, 625 N.W.2d at 389. Because there was no such determination in that case, the court held that the garnishment plaintiff needed to "specifically allege the factual basis for a claim of fraudulent conveyance in a separate proceeding[.]" *Id.* Similarly, Plaintiffs argue that Davis must assert his contribution theory in a separate proceeding.

*Luptak* does not apply here because Davis's contribution theory relies upon a different category of property interest held by Plaintiffs than the one at issue in *Luptak*. Davis contends that Plaintiffs owe Great Lakes a contribution debt. Thus, he apparently seeks to garnish "all debts, whether or not due, owing by the garnishee to the defendant when the writ is served on the garnishee[.]" Mich. Ct. R. 3.101(G)(1)(d). Thus, unlike the property interest at issue in *Luptak*, Plaintiffs' alleged contribution debt appears to fall under the types of property subject to garnishment under the Michigan Court Rules.

Notably, the court in *Luptak* rejected a notice argument similar to the one made by Plaintiffs here. Plaintiffs contend that the writ of garnishment did not give them adequate notice of Davis's contribution claim. Similarly, the garnishee in *Luptak* argued that the writ of garnishment did not provide the facts necessary to provide notice of the fraudulent conveyance theory of the garnishment plaintiff's claim, as would be required if the plaintiff had filed a complaint in a regular civil action under Rule 2.111(B)(1) of the Michigan Court Rules. The Michigan Court of Appeals disagreed, holding that the garnishment plaintiff's verified statement served as the complaint

according to Rule 3.101(M); that statement complied with Rule 2.111(B)(1) and sufficed to provide adequate notice. *Luptak*, 625 N.W.2d at 388-89. Thus, the foregoing rules and case law all suggest that garnishment proceedings in Michigan are separate proceedings with the force and effect of other civil proceedings in state court.

### 2. Important state interests

The interest at issue here is the recovery of damages by a private party under a state court judgment against another private party. Neither Davis's interest in recovery, nor Plaintiffs' interest in a declaration of non-liability, implicate an important state interest. Accordingly, *Younger* abstention is not appropriate here.

### C. *Pullman* abstention

The *Pullman* abstention doctrine "is based on the avoidance of 'needless friction with state policies,' and 'a premature constitutional adjudication.'" *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (quoting *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)). In other words, "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Id.* at 750 (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). There is no constitutional issue at play in this case, so the *Pullman* doctrine does not apply.

### D. *Burford* abstention

The *Burford* abstention doctrine applies "[w]hen the exercise of federal jurisdiction is so disruptive of state efforts to establish a coherent, unified regulatory policy over a subject of weighty enough importance to the state[.]" *William Powell Co. v. Nat'l Indemnity Co.*, 18 F.4th 856, 864 (2021) (citing *Burford v. Sun Oil Co.*, 319 U.S. 315, 334 (1943)). Those circumstances are not present here. Accordingly, that doctrine does not apply.

In short, the Court discerns no basis for abstention.

14

## IV. CONCLUSION

For the reasons discussed above, the Court will decline to exercise its declaratory judgment jurisdiction. Consequently, the Court will dismiss the case without prejudice. The Court will enter a judgment consistent with this Opinion. Because the Court is declining jurisdiction, the Court will not consider Davis's motion to dismiss.

Dated: December 26, 2023              /s/ Hala Y. Jarbou
                                                             HALA Y. JARBOU
                                                             CHIEF UNITED STATES DISTRICT JUDGE